# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.  Criminal Action No. 2:14-cr-13-2

NATUSHA JEWELL BIGGINS,
    Defendant.

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Natusha Jewell Biggins, in person and by counsel, Dwight Hall, appeared before me on April 8, 2014. The Government appeared by Assistant United States Attorney Stephen Warner. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Nine of the Indictment.

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath.

The Court then inquired of Defendant whether she was a citizen of the United States. Defendant responded that she is a citizen. The undersigned asked Defendant whether she understood that if she were not a citizen of the United States, by pleading guilty to a felony charge she would be subject to deportation at the conclusion of any sentence; that she would be denied future entry into the United States; and that she would be denied citizenship if she ever applied for it. Defendant stated that she understood.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as

summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Natusha Jewell Biggins, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count Nine of the Indictment and the elements the Government would have to prove, charging her with possession of pseudoephedrine to be used in the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1). The undersigned then reviewed with Defendant the statutory penalties applicable to an individual

adjudicated guilty of the felony charges contained in Count Nine of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charges pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on Count Nine was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. Defendant also understood that her sentence could be increased if she had a prior firearm offense, violent felony conviction, or prior drug conviction. She also understood she might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant her waiver of appellate rights as follows:

Ct: Did you and Mr. Hall discuss and did you understand from that discussion that you have a right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals?

Def. Yes, sir.

Ct. Did you and Mr. Hall discuss and did you understand from that discussion that you may collaterally attack or challenge your sentence and how that sentence is being carried out by filing what is commonly called a writ of habeas corpus motion?

Def. Yes, sir.

Ct. Did you understand from the written plea agreement, paragraph numbered 13, that if the District Judge's actual sentence is the same as or equal to an advisory Guidelines sentence

3

| | |
|---|---|
| | with a determined Guideline level under Chapter 2 and before any Chapter 3 adjustments of 23 or below, then you give up your right to appeal that sentence and you also give up your right to collaterally attack or challenge the sentence? |
| Def. | Yes, sir. |
| Ct. | In fact, I think under paragraph 14 you are completely waiving your right to collaterally attack or challenge your sentence by filing a writ of habeas corpus motion, is that your understanding also? |
| Def. | Yes, sir. |
| Ct. | Is that what you intended to do by signing the agreement with paragraphs 13 and 14 in it? |
| Def. | Yes, sir. |
| Ct. | Did you completely understand those paragraphs before you signed the agreement? |
| Def. | Yes, Your Honor. |

From the foregoing colloquy the undersigned determined that Defendant understood her appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Nine of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count Nine of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not have a right to withdraw her guilty plea. Defendant

5

further stated her attorney showed her how the advisory guideline chart worked but did not promise her any specific sentence at the time of sentencing. Defendant stated that she understood her attorney could not predict or promise her what actual sentence she would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, Natusha Jewell Biggins, with the consent of her counsel, Dwight Hall, proceeded to enter a verbal plea of **GUILTY** to the felony charge in Count Nine of the Indictment.

The Court would generally hear the testimony of a Government witness at this point in the hearing to support an independent basis in fact for the guilty plea. In this case, the parties agreed that the Government would provide a proffer to provide that independent basis in fact. The Government proffered that on March 12, 2013, Corporal Shrader of the West Virginia State Police received a dispatch regarding a 911 call placed in Barbour County, West Virginia, within the Northern District of West Virginia. The 911 call was regarding a domestic disturbance at the residence of Defendant and her boyfriend, co-defendant Chad Edward Cutright. Cutright reported that Defendant had been using drugs all day and that he was trying to stop her from leaving with her children in their car. Upon arrival at the residence, Corporal Shrader observed a blue backpack lying on the ground. Cutright indicated that the backpack did not belong to him. Corporal Shrader opened the backpack and saw that it contained materials used to manufacture methamphetamine. Also in the bag was a box of Wal-itin D 24, which contains pseudoephedrine. That box of Wal-itin D 24 was purchased at the Walgreens in Elkins, West Virginia, at 4:14 p.m. A review of NPLEX indicated that Cutright had made that purchase. Cutright gave written consent for Corporal Shrader to search the residence, and Corporal Shrader located more methamphetamine manufacturing materials inside the residence.

Cutright stated that he had completed approximately 18 to 20 "shake and bake" methamphetamine "cooks" and that Defendant's children had been present for some of these "cooks." Three days later, on March 15, 2013, Cutright went to the State Police detachment in Barbour County and gave a recorded confession to Corporal Shrader. A review of NPLEX indicated that Defendant and Cutright each made three (3) purchases of pseudoephedrine during the time period covered by the conspiracy. Those purchases occurred on December 22, 2012, January 5, 2013, and March 12, 2013. Defendant's March 12, 2013 purchase of pseudoephedrine is the subject of Count Nine, and that purchase was made at the Rite Aid in Philippi, Barbour County, West Virginia.

Defendant stated she heard, understood, and did not disagree with the Government's proffer except to the statement that she and her children were present when Cutright manufactured methamphetamine. Nevertheless, the undersigned United States Magistrate Judge concludes the offenses charged in Count Nine of the Indictment are supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by the Government's proffer.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Nine of the Indictment; Defendant understood the consequences of her plea of guilty, in particular the maximum statutory penalty to which she would be exposed for Count Nine; Defendant made a knowing and voluntary plea of guilty to Count Nine of the Indictment; and Defendant's plea

is independently supported by the Government's proffer which provides, beyond a reasonable doubt, proof of each of the essential elements of the charges to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to Count Nine of the Indictment and recommends she be adjudged guilty on said charges as contained in Count Nine of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is released pursuant to the Order Setting Conditions of Release previously entered in this matter.

The Clerk of the Court is directed to send a copy of this Order/Opinion to counsel of record.

DATED: April 9, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE